THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW GREEN,                          :
                                       :
            Plaintiff,                 :
                                       :
      v.                               :      3:16-CV-1041
                                       :      (JUDGE MARIANI)
PIKE COUNTY                            :
                                       :
            Defendant.                 :

## MEMORANDUM OPINION

### I. INTRODUCTION

This is an employment action arising from Plaintiff Andrew Green's termination by

Defendant Pike County (the "County"). Before his termination, Mr. Green was a sergeant

correctional officer for the Pike County Correctional Facility. He was terminated by a letter

from the Correctional Facility's Warden, dated September 9, 2014, citing excessive

unexcused absences and poor work performance. Green brings a *Monell* action against

Pike County pursuant to 14 U.S.C. § 1983, alleging (1) discrimination and retaliation based

on his request for an accommodation for his depression under the Americans with Disability

Act (the "ADA"), and the Pennsylvania Human Relations Act (the "PHRA"), (2)

discrimination and retaliation under the Rehabilitation Act, and (3) interference and

retaliation claims under the Family and Medical Leave Act (the "FMLA"). Doc. 1. The

parties have proceeded to discovery without filing motions to dismiss. Pike County filed its

motion for summary judgment on June 15, 2017. Doc. 21. The parties have fully briefed

1

the motion, and it is ripe for decision. For the reasons set forth below, Defendant's motion for summary judgment will be denied.

## II. STATEMENT OF UNDISPUTED FACTS

The County has submitted a Statement of Material Facts as to which it submits there is no genuine issue or dispute for trial. Doc. 22. In response, Green submitted responses to the Statement of Material Facts as well as a supplemental "Counterstatement of Material Facts." Doc. 26-3. The following facts are not reasonably in dispute except as noted.

Green was employed by Pike County at the Pike County Correctional Facility from August 30, 2010 to September 9, 2014. Doc. 22 ¶ 1. Green was first hired as a correctional officer, but was promoted to Sergeant on August 5, 2012. *Id.* ¶ 3. On August 6, 2014, Assistant Warden Robert McLaughlin sent a letter to Mr. Green recommending termination (the "McLaughlin letter"). Doc. 22-2. The letter was issued after an "Investigatory Interview scheduled for August 6, 2014 [to discuss] certain charges / allegations against [Green]." *Id.* at 1. Due to Green's failure to show up at the Interview, the "proceeding was held *in absentia.*" *Id.* The letter bases its recommendation on Green's history of poor work performance, including frequent absences and "willful misconduct," including failures to be attentive to his Sergeant duties, permitting officers he supervised to leave early, unprofessional comments to inmates, failures to follow policies or directives for inmate cell phone searches, and failure to arrange a required inmate medical transport. *Id.* at 1-3. *See also* Doc. 22 ¶¶ 20-21.

2

According to the letter, Green's "absence from work [] began [on] July 11, 2014," but he "never submitted a written report, or filed a workers compensation claim" for his absences. *Id.* at 3. The letter acknowledges that "[o]n August 18, 2014 [Green] spoke with Facility Personnel Liaison Jill Gschwind and conveyed that [he] didn't know [he] had to file a report and stated that [he] didn't know how [he] could have because [he] had a nervous breakdown." *Id.*[1] However, McLaughlin discounted Green's justification for failing to file the required paperwork, stating: "[a]s a Sergeant with two (2) years of experience and the responsibility of ensuring adherence to workers compensation protocols...I find it difficult to believe you didn't know you were required to file a report. I also conclude that you could have filed a written report within a reasonable time frame, which you have not." *Id.* McLaughlin concluded that he will recommend termination to Warden Lowe. *Id.*

On September 9, 2014, approximately a month after the McLaughlin letter, Warden Craig Lowe sent Green a termination letter, citing his absences and poor work performance as reasons for termination. Doc. 22-3. In particular, the termination letter recounted an incident when Deputy Warden Romance and other officers called Green for help when "inmates were throwing soap out of their cells into the dayroom[,] nearly hitting Correctional Officer Christensen," and Green provided an "inappropriate substandard response to this situation" by telling Christensen: "They are staying locked down" and then hanging up the

---

[1] Even though the McLaughlin letter is dated August 6, 2014, it recounts a conversation between Green and Jill Gschwind as having occurred on August 18, 2014. Neither party has explained this inconsistency. The Court presumes that the letter contained a typographical error, and that the conversation occurred on July 18, 2014.

phone on him. *Id.* at 1. The letter also noted that Green had "been absent from work since July 11, 2014" and had accrued "thirty-eight (38) days off as leave without pay which is considered by definition an unauthorized or unexcused absence." *Id.*

The facts above, unfortunately, are all that the parties can agree upon. The County's statement of facts contains no other assertions except legal conclusions or conclusions based on an absence of evidence, all of which are disputed by Green. Doc. 22 ¶¶ 7-17, 19. For example, the statement of facts claims that (1) "Green never asked the County to accommodate a disability"; (2) "Green provided nothing in discovery to support his claim that he suffered a disability that substantially limited at least one major life activity"; (3) "Green never provided Pike County with medical reports reflecting he suffered a physical or mental impairment that substantially limited one or more of the major life activities"; (4) "Green never even applied for FMLA leave"; and (5) "Pike County did not retaliate against Green for pursuing his FMLA rights because he never asked for such leave." *Id.* Most of these statements are asserted without evidentiary support, though the County has cited to the record in two instances, both of which rely on snippets of Green's deposition testimony, which were included in the statement of facts without context. First, the County asserts that Green "never asked the County to accommodate a disability," and cites to several lines of Green's deposition where he agreed that "nowhere in these 20 pages of record did [he] request any sort of accommodation or reference any type of mental or...health condition of any sort." *Id.* ¶ 7. However, it is unclear from the citation alone what "these 20 pages of

4

record" referred to. It was not until the Court reviewed the actual relevant portion of the testimony that it became clear that Green was testifying about a record of a February 27, 2013 Investigative Interview involving him. Doc. 22-1 at 23-25. Given that the relevant events of this case occurred in the summer of 2014, the fact that Green did not request an accommodation more than a year prior to his termination does not conclusively establish that he had never requested an accommodation. Second, the County also pointed to Green's testimony as support for the proposition that Green "never even applied for FMLA leave," but the cited portion only reflects Green's testimony that he "gave [his doctor] Dr. Al-Tariq FMLA short term disability and workman's comp paper" and that his "understanding was that [Dr. Al-Tariq] would fill out the appropriate paperwork and submit it [to his employer]." *Id.* ¶ 17 (citing Doc. 22-1 at 89-90). Green testified that he "never asked the question again until [he] was told by the Facility that they had not received the paperwork." *Id.*

Most troublingly, the above encompasses the entirety of the County's statement of facts on which it relied for its motion. It is not until Green filed his own "counterstatement of facts" that the Court is apprised of an additional—but equally important—set of facts, to which the County did not provide any responses, nor did it file a reply brief addressing these additional facts, when it had the option to do so. The Court thus has little aid in verifying Green's counterstatement of facts. However, at least some of Green's statements of fact are supported by undisputed documentary evidence, which the Court sets forth below.

First, Green submitted an August 1, 2014 email from him to Deputy Warden

Romance. The email predates the McLaughlin letter by five days, and predates his

termination by approximately a month. *Compare* Doc. 26-6 (the "August 1 email") *with* Doc.

22-2 (the McLaughlin letter dated August 6, 2014) and Doc. 22-3 (the termination letter

dated September 9, 2014). The County admitted to the existence of the email in its Answer

to the Complaint. Doc. 7 at 10-11 (admitting that "on August 1, 2014, Green emailed

Jonathan Romance complaining of excessive workload," but "deny[ing] Green had a

disability that required accommodation, that he asked for accommodation[,] or that his

termination was disability related"). The email, which was filed as an exhibit to Green's

counterstatement of facts, contains a summary of Green's efforts to keep the County

apprised of his mental health condition and his efforts to request medical leave. It states in

relevant part:

> Please be advised that as you are aware and your records will show, I did
> speak with you via telephone on 7/1/14 and informed you that I was in need of
> urgent assistance as a result of excessive workload. I was distressed and
> believed that without such assistance I would be unable to complete all of my
> duties for the shift In accordance with the SOPs...On 7/10/14 I did consult a
> specialist who immediately placed me on medical leave for a period of two
> weeks. As a result I faxed in the doctor['s] order and did contact Jill Gschwind,
> the personnel director[,] several hours prior to the beginning of my shift. I was
> placed on hold and she told me that she was going to Inform the Warden. A
> moment later she returned and informed me that she had informed the
> Warden of the situation. *Jill also informed me that I should come to the
> Facility and retrieve FMLA and short term disability paperwork which I did*. At
> that time, while I was aware that an Investigatory [Interview] had been served
> to me on 7/10/14 and scheduled for 7/18/14, I was unable to attend that
> Interview as I was under specific directives from my doctor not to return to
> work. On 7/25/14 in my recent consultation with my doctor I was diagnosed as

6

having a work related stress disorder which resulted in the Doctor filling out and forwarding workers compensation paperwork. He also extended my medical leave for an additional four weeks. On 8/1/14 I did receive a certified letter containing documents referring [me] to a second Investigatory Interview scheduled for 8/6/14. I shall be unable to attend that Interview as I remain under directive from my doctor to be away from the Facility. Consistent with the foregoing, and the code and practice extended to others who have been scheduled with Investigatory Interviews while on medical leave and have been granted a deferral of date, I respectfully request that these two Investigatory interviews be differed [*sic*] until such time as I am medical[ly] cleared to return to work. At that time I shall be happy to cooperate in any way possible to clear up these issues and look forward to continuing to perform my duties. I look forward to your reply.

Doc. 26-6, at 2-3 (emphasis added). In addition to the email, Green also submitted

two communications that his doctor sent to the County before his termination. The first is a

fax to "Jill" (presumably referring to the County's personnel director Jill Gschwind), dated

July 25, 2014, stating that "pt is still very depressed [and] progress is limited. Needs

another 4 weeks off from work." Doc. 26-9.[2] The second doctor's communication was a

letter dated August 22, 2014, sent from Dr. Al-Tariq to the County, stating that Green is "not

ready to return to work" and that he will need to reevaluate Green in 8 to 12 weeks. Doc.

26-10. Finally, Green filed the deposition transcript of Jill Gschwind as an exhibit, in which

she testified that she received Green's doctors' notes; that she shared them with Warden

Lowe, since her standard practice was to "always give the doctor's notes to the Warden";

that she recalled leaving FMLA and short-term disability paperwork for Green to pick up at

her office "because he advised me he was going to be out of work for some time"; and that

---

[2] Green avers that "this note was included in Defendant's document production." Doc. 26-3 ¶ 21. However, without any response from the County, the Court has no way of verifying whether this is true.

Warden Lowe would have been aware of Green's request for FMLA paperwork because she "always kept [his office] apprised" of FMLA requests. Doc. 26-12 at 16-19.

As discussed above, the County never filed responses to Green's counterstatement of facts, nor did it file a reply brief, which would have clarified which facts are disputed, and whether the authenticity of any of Green's exhibits are disputed. Given the County's admission to the existence of the August 1 email, Ms. Gschwind's testimony corroborating the County's receipt of the doctors' communications, and the County's failure to dispute the email or the doctor communications, the Court will construe these documents as undisputed.

## II. STANDARDS OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, …[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct.

8

3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary

judgment simply on the basis of the pleadings, or on conclusory statements that a factual

issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the

record . . . or showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support

the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should

be granted, "[t]he court need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light

most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW,*

*Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912,

113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary

judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no *genuine* issue of

9

*material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. ANALYSIS

Green has brought ADA and PHRA claims for discrimination and retaliation based on his request for medical leave for his depression. "The PHRA is basically the same as the ADA in relevant respects and 'Pennsylvania courts...generally interpret the PHRA in accord with its federal counterparts.'" *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (quoting *Kelly v. Drexel University*, 94 F.3d 102, 106 (3d Cir.1996)). The *McDonnell Douglas* burden-shifting framework applies to claims brought under the ADA. *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 667–68 (3d Cir. 1999). First, the plaintiff has the burden of making a *prima facie* case.

"[T]o establish a *prima facie* case of discrimination under the ADA, the plaintiff must show: '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir.1998). "[A]n employer discriminates against a qualified individual with a disability when the employer does 'not mak[e] reasonable accommodations to the known physical or mental

10

limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A)). "To satisfy the requirement of having a 'disability' a plaintiff may demonstrate any one of: an actual mental or physical impairment that substantially limits one or more major life activities, a record of such impairment, or that his employer regarded him as having a disability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citing *Marinelli v. City of Erie*, 216 F.3d 354, 359 (3d Cir.2000)).

"To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997). "The burden-shifting scheme established in *McDonnell Douglas* also applies to retaliation claims." *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 703 (E.D. Pa. 2010).

After the plaintiff makes his *prima facie* case, the burden "shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the [adverse employment action].'" *Walton*, 168 F.3d at 668 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)). Once the employer states a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff in the third and final step of the framework, where plaintiff must "point to some evidence, direct or circumstantial, from which a fact finder could reasonably

11

either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (internal quotation marks omitted).

The County concedes that Green's termination is an adverse employment action, but argues that Green has not proven that he is disabled under the ADA because "Green never provided the medical proof for the County to have evaluated whether it could accommodate his disability and whether he even had a qualified disability under the ADA." Doc. 23 at 11. However, the County's own motion papers fail to address, or even acknowledge the existence of, Green's doctor's notes that were sent to the County prior to his termination. The notes, which were forwarded to the County on July 25, 2014 and August 22, 2014, stated that Green was "still very depressed [and] progress is limited," that he was "not ready to return to work," that he needed continued leave from work, and that he required medical reevaluation at a later time. Docs. 26-9, 26-10.

These doctor communications are not rebutted by the County. There is also no record of the County evaluating the medical opinions in these doctor's notes, even though there is evidence showing that the County was in receipt of these notes and the accompanying request for medical leave before Green's termination. *See* Doc. 26-6 at 2-3 (the August 1 email showing that Green "faxed the doctor's order to Jill Gschwind, the County's personnel director," that she purportedly informed the Warden of the situation, and that she advised him of the next steps in requesting FMLA leave, including asking him to

12

complete FMLA paperwork); Doc. 26-12 at 16-18 (Jill Gschwind testifying that she received the doctor's communications from Green and that she shared them with the Warden).

Furthermore, Green's doctor indicated that reevaluation would be needed in 8 to 10 weeks to determine whether Green may return to work (Doc. 26-10), which suggests that his condition is not so minor or transitory as to preclude him from arguing that his depression constituted a disability under the ADA. *See, e.g., Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 765, 766 n.8 (3d Cir. 2004) (reversing district court's grant of summary judgment, and finding that "a reasonable jury could conclude that Williams's [depression] was not a temporary one, and would not be precluded from reaching a finding of actual disability," based on the doctor's "lack of [] assurance" that "treatment would improve [plaintiff's] condition in the future," and on the doctor's written recommendation that plaintiff refrain from active duty work "for a minimum period of 3 months," at which time he must be "reevaluated...in order to determine whether or not he can resume active duty."); *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 692 (W.D. Pa. 2014) (granting summary judgment on other grounds, but finding that "[c]learly, Rubano's documented history of depression, which necessitated two FMLA leaves for clinical and pharmaceutical treatment in 2010 and 2011, constitutes a mental impairment under the ADA").

Green has also established that he was denied a reasonable accommodation for his request for medical leave. "A leave of absence for medical treatment may constitute a reasonable accommodation under the ADA." *Bernhard v. Brown & Brown of Lehigh Valley,*

*Inc.*, 720 F. Supp. 2d 694, 701 (E.D. Pa. 2010) (citing *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir.2004)). While the County's motion papers do not mention Green's August 1 email to Deputy Warden Romance, the County did admit to the existence of such an email in its Answer to the Complaint. *See* Doc. 7 at 10-11. The August 1 email reveals that Green had "consult[ed] with a specialist who immediately placed [him] on medical leave for a period of two weeks," that he faxed the doctor's order to Jill Gschwind, the County's personnel director, that she purportedly informed the Warden of the situation, that she advised him of the next steps in requesting FMLA leave, including asking him to complete FMLA paperwork, and that his doctor subsequently extended his time away from work. Doc. 26-6 at 2-3. The email's statements are corroborated by Jill Gschwind, who testified that she received the doctors' notes; that she shared them with Warden Lowe; that she left FMLA and short-term disability paperwork for Green to pick up "because he advised me he was going to be out of work for some time"; and that Warden Lowe would have been aware of the situation because she "always kept [his office] apprised" of FMLA requests. Doc. 26-12 at 16-19. "Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor*, 184 F.3d at 313. Thus, Green has established a *prima facie* case of ADA discrimination because there exist genuine issues of fact as to whether the County had a record of his impairment or regarded him as having an impairment, and whether the County failed to make a reasonable

14

accommodation for Green's impairment, but instead chose to terminate him shortly thereafter.

In addition, the temporal proximity between the August 1 email and the McLaughlin letter (dated August 6, 2014) constitutes circumstantial evidence that the County retaliated against Green by recommending termination instead of providing the requested accommodation. In the August 1 email, Green stated that he cannot appear for his two scheduled Investigative Interviews due to doctor's orders, but he "shall be happy to cooperate in any way possible to clear up these issues" after he returns from medical leave. *Id.* at 3. Yet, the County proceeded to hold the scheduled Investigative Interview *in absentia*, just five days after Green sent his email, and concluded that termination was appropriate at the proceeding. Doc. 22-2.

In the ADA retaliation context, the "temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997)). "The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." *Id.* It is also well-established that "[p]rohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d

Cir. 2010). Thus, Green has made a *prima facie* case for his both his retaliation claim and his discrimination claim under the ADA.

Having established that Green met his initial burden, the question becomes whether summary judgment is warranted under the second and third steps of the *McDonnell Douglas* framework. The County's main argument is that Green was terminated due to his numerous absences and incidents of misconduct. *See* Doc. 22-2 at 1-3 (listing work performance issues in Green's personnel file). However, assuming that the County has met the second step of the framework by proffering legitimate, nondiscriminatory reasons for Green's termination, the motion for summary judgment would be defeated at the third step, because the record raises triable issues of fact as to whether the County's proffered reasons should be credited.

As discussed above, Green has produced evidence of communications both from him and his doctors to the County prior to the McLaughlin letter. These communications were sent to the County within two weeks of when he was recommended for termination. *Compare* Doc. 22-2 at 3 (McLaughlin letter, dated August 6, 2014) *with* Doc. 26-9 (Green's first doctor's note, dated July 25, 2014, stating that "pt is still very depressed [and] progress is limited. Needs another 4 weeks off from work"). Given the timing of these events, the Court finds it baffling that the County failed to address or even mention these communications in its motion papers, and further failed to submit a reply brief that could have addressed such communications.

16

At the third step of the frame work, "the plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case." *Fuentes*, 32 F. 3d at 764. This is especially true where, as here, the Defendant has wholly failed to address or distinguish the evidence of retaliation and discrimination submitted by the Plaintiff. Besides the August 1 email from Green and communications from his doctor, the McLaughlin letter itself indicated that the County was aware of Green's mental health issues. Doc. 22-2 at 3 (noting that "[Green] spoke with Facility Personnel Liaison Jill Gschwind and conveyed that [he] didn't know [he] had to file a report and stated that [he] didn't know how [he] could have because [he] had a nervous breakdown."). *See also* Doc. 26-12 at 16-18 (Jill Gschwind testifying that she received the doctor's communications from Green and that she shared them with the Warden). Thus, there is sufficient evidence that the County had knowledge of Green's medical condition shortly before it recommended termination.

Furthermore, both the McLaughlin letter and the termination letter referenced the fact that the bulk of Green's absences began on July 11, 2014, which began mere weeks before he was recommended for termination. Doc. 22-2 at 3; Doc. 22-3 at 1. This timeline would be consistent with Green's explanation for his absences in the August 1 email, which indicates he had notified the County of his doctor's orders that he be placed on medical leave starting on July 11, 2014. *See* Doc. 26-6 at 2 ("On 7/10/14 I did consult a specialist who immediately placed me on medical leave for a period of two weeks. As a result I faxed

17

in the doctor['s] order and did contact Jill Gschwind.... [she] informed me that she had informed the Warden of the situation.").

Nevertheless, the County argues that Green "never provided the medical proof for the County to have evaluated whether it could accommodate his disability and whether he even had a qualified disability under the ADA," and that he also "failed to provide the County with a completed request for FMLA leave." Doc. 23 at 11. The County contends that "[t]hese deficiencies are fatal to his claim." *Id.* But failure to formally notify the employer of a disability with supporting "medical proof" or failure to complete the proper paperwork are not grounds to dismiss an ADA claim or an FMLA claim. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) ("The law does not require any formal mechanism or 'magic words,' to notify an employer such as MBNA that an employee needs an accommodation.") (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir.1999); *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (stating that under the FMLA, "[i]t is clear that an employee need not give his employer a formal written request for anticipated leave. Simple verbal notification is sufficient.")

Furthermore, the temporal proximity between Green's request for a leave of absence and the recommendation for termination gives rise to an inference that the adverse employment actions may have been motivated by discrimination. According to the McLaughlin letter, it appears that the County had numerous documented incidents of work misconduct by Green, starting from November 2012. Doc. 22-2 at 2 (listing incidents of

18

poor work performance chronologically from November 20, 2012). Yet the County did not terminate Green until a few weeks *after* Green's email reflecting his request for a leave of absence and FMLA benefits. Doc. 26-6, at 2-3 (August 1 email stating that Green had faxed the doctor's note to Jill Gschwind around July 10, 2014 and informed her of his intent to take leave). *See also* Doc. 26-12 at 16-19 (Jill Gschwind testifying that she recalled leaving FMLA and short-term disability paperwork for Green to pick up "because he advised me he was going to be out of work for some time"). Five days after Green sent his email, he was recommended for termination by McLaughlin, and approximately a month after that, he was terminated. Doc. 22-2, 22-3. Thus, there is sufficient evidence to create an issue of fact as to whether Green was terminated because of his request for an accommodation for his depression. Therefore, Green's retaliation claim, which is predicated on the same documentary evidence and factual issues, is also entitled to proceed to trial. *See Kessler v. AT & T*, 2015 WL 5598866, at *14 (M.D. Pa. Sept. 22, 2015) ("Because the adverse employment actions alleged for [the retaliation] claim are the same as those alleged with respect to Plaintiffs discrimination claim, the Court will not repeat its analysis of McDonnell Douglas Steps Two and Three here. There remain disputes of fact as to whether the alleged incidents of harassment were motivated by retaliatory intent.").

Green has also brought claims for "unlawful discrimination and retaliation under the Rehabilitation Act." Doc. 1 ¶ 41. The Third Circuit has explained that "the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same."

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (quoting *Ridley Sch. Dist. v. M. R.*, 680 F.3d 260, 282-83 (3d Cir. 2012)). *See also Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) ("As an initial matter, we note that the Rehab Act, ADA, and PHRA ('the Acts') are all to be interpreted consistently, and that all have the same standard for determination of liability."). Thus, for reasons set forth above in the analysis of Green's ADA and PHRA claims, the Rehabilitation Act claims cannot be resolved on summary judgment because there are genuine issues of material fact as to whether the County discriminated and retaliated against Green for requesting an accommodation.

Finally, Green has brought interference and retaliation claims under the FMLA based on substantially the same set of underlying facts. The County's motion papers do not address the interference claim, thus, it appears that the County has not moved for summary judgment on the claim. But even assuming that the County moves to dismiss both FMLA claims, the motion would be defeated for substantially the same reasons set forth above in the ADA discrimination and retaliation claims' analysis.

"[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). "The Third Circuit has largely analyzed such claims under the retaliation framework, and has found that where a retaliation claim based on a termination can survive summary judgment, an interference claim based on the same facts also survives." *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d

20

684, 694 (E.D. Pa. 2015) (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012). "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to [his] invocation of rights." *Lichtenstein*, 691 F.3d at 301–02.

As discussed above, Green has presented evidence that undermines the County's contention that it "never had notice that Green had decided to take FMLA leave." Doc. 23 at 17. The August 1 email states that Jill Gschwind had informed Green to "come to the Facility and retrieve FMLA and short term disability paperwork[,] which [he] did." Doc. 26-6, at 2. Additionally, Ms. Gschwind testified that she recalled leaving FMLA and short-term disability paperwork for Green to pick up "because he advised me he was going to be out of work for some time," and that Warden Lowe would have been aware of Green's request for FMLA paperwork because she "always kept [his office] apprised" of FMLA requests. Yet, Green was recommended for termination five days later, after an Investigative Interview held *in absentia* due to his absence. For reasons stated above in the analysis of the ADA and PHRA claims, a reasonable juror may infer, based on the temporal proximity between Green's request for FMLA benefits and the McLaughlin letter recommending termination, that he was terminated for attempting to exercise his FMLA rights. Thus, Green's FMLA claims cannot be dismissed at this stage of the proceedings.

21

## IV. CONCLUSION

For the reasons outlined above, Pike County's motion for summary judgment (Doc. 21) will be denied.  A separate Order will follow.

Robert D. Mariani
United States District Judge